## Walter J. Merritt, Appellee, v. International Harvester Company, Appellant.

### Gen. No. 14,986.

1. BILL OF EXCEPTIONS—*when motion to strike denied.* If the time for the filing of the bill of exceptions has been extended by order entered with jurisdiction, the fact that it recites that such order was made pursuant to stipulation may be rejected as surplusage and the extension sustained as not dependent at all upon the stipulation.

2. EVIDENCE—*what competent upon question of care and competency of employe.* A single act of negligence *held* competent, under the particular circumstances of this case, upon the question of the care and competency of an employe.

3. INSTRUCTIONS—*need not repeat.* An instruction containing a correct proposition of law, though refused, will not reverse if its substance is contained in other instructions given.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. BEN M. SMITH, Judge, presiding. Heard in this court at the October term, 1908. Affirmed. Opinion filed March 17, 1910. Rehearing denied March 31, 1910.

WILLIAM ROTHMANN and D. A. OREBAUGH, for appellant; EDGAR A. BANCROFT, of counsel.

DAVID K. TONE and H. M. ASHTON, for appellee.

MR. JUSTICE BAKER delivered the opinion of the court.

In an action on the case for personal injuries in the Superior Court, the declaration averred that plaintiff

was an electrician in the service of defendant, and when injured was engaged in repairing an electric crane; that he was injured by reason of the careless-ness and incompetency of the servant of defendant who was in charge of said crane; that said crane man was incompetent and habitually negligent, etc., and that defendant knew, or in the exercise of ordinary care could have known that said crane man was in-competent, negligent, etc.; that plaintiff did not know and could not in the exercise of ordinary care have known that said crane man was incompetent or negli-gent, etc. The trial resulted in a judgment for the plaintiff for $7,500 and the defendant appealed.

A motion by appellee to strike the bill of excep-tions from the record was reserved to the hearing. The time for filing a bill of exceptions was, by an order entered on the stipulation of the parties, extended to and including Saturday, August 8, 1908. Judge Ben M. Smith was the presiding judge at the trial of the cause. August 6, 1908, Judge McEwen entered in the Superior Court the following general order: "It is ordered that the Superior Court adjourn and that the clerk's office of said court be closed on Saturday, August 8, 1908, known as primary election day. It is further ordered that all motions, orders and rules made returnable and expiring on the aforesaid day be, and the same are hereby continued until Monday, August 10, A. D. 1908, without further notice."

August 10 the following order was entered in said cause: "Motion by defendant, by its attorney, for extension of time to file bill of exceptions entered and continued this 10th day of August, 1908."

August 11 the following order was entered in said cause: "On the stipulation of the parties to this suit filed, it is ordered that the time for filing the bill of exceptions herein be and is hereby extended to and including September 10, A. D. 1908." On the same day there was filed in the cause an instrument pur-porting to be a stipulation by the attorneys of record of the parties for the extension of the time for filing

the bill of exceptions in said cause to September 10, 1908. By an order entered August 18 plaintiff's motion to strike from the files said stipulation filed August 11 and to vacate the order that day entered was entered and continued, to be disposed of by Judge Smith. By an order entered September 4 said motions were continued to the September term. The bill of exception was presented to Judge Smith September 5, 1908.

November 18, 1908, the motions of plaintiff to strike from the files said instrument purporting to be a stipulation to extend the time for filing bill of exceptions filed August 11 and to set aside the order that day entered extending the time for filing bill of exceptions to September 10, were both denied, and order entered giving defendant leave to file its bill of exceptions *nunc pro tunc* as of September 5, 1908, and on the same day the bill of exceptions was filed *nunc pro tunc* as of that date.

Appellee does not contend that the general order entered August 6, 1908, that the clerk's office be closed August 8 and that "all motions, orders and rules made returnable and expiring on the aforesaid day be continued until Monday, August 10, 1908," did not operate to extend defendant's time for filing a bill of exceptions in this case to and including August 10, but his contention is that assuming that the order operated to extend the time for filing the bill to and including August 10, no order extending the time for filing the bill was entered until after August 10, and that the court could not, after that day, except by consent of parties, extend the time for filing a bill of exceptions. Mr. Jacob M. Owen signed the stipulation filed August 11 in the name of plaintiff's attorneys. He had no authority either from the plaintiff or either of his attorneys to sign any stipulation in the cause, and the stipulation was therefore not binding on the plaintiff. But we think, although the question is not free from difficulty, that the effect of the order of August 10, assuming that the court had on

that day authority to enter an order further extending the time for filing a bill of exceptions, was to extend and continue in the court such power after August 10. If this conclusion is correct, it is not material that the stipulation filed August 11 was not authorized by or binding on the plaintiff, or that the order of August 11 states that it was made on the stipulation of the parties, for if the court had authority on August 11 to make the order without the consent of the plaintiff, the stipulation and so much of the order as recites that it was made on the stipulation of the parties may be disregarded and the order held valid as an order, not made by consent of plaintiff, that the time for filing the bill be extended to September 10. The bill was presented to the trial judge September 5, and therefore might properly be ordered filed as of that date.

The motion of appellee to strike the bill of exceptions from the record is therefore denied.

Three errors in procedure are relied on for reversal by appellant. The first is that the court erred in refusing to permit Michel, the general foreman of defendant's foundry, to answer the question "whether any one had complained to him about the way in which Paul (the crane man) did his work?" Michel was asked by defendant's counsel what Paul's reputation was on, etc., around the foundry with reference to whether he was careful and competent, and answered, "I had never heard anything either way." He was then asked, "Did you ever hear anybody say that he was careless or not competent?" and answered "No." He was then asked the question whether any one had complained to him of the manner in which Paul did his work, and the objection was properly sustained on the ground that the witness had already answered the question.

The second is that the court erred in admitting the testimony of the witness Hlavac to a single act of alleged negligence on the part of the crane man. We

think the evidence was, under the circumstances of the case, competent.

The third is the refusal of the court to give for defendant the following instruction: "The jury are instructed that even if you believe from the evidence that on and before July 1, 1907, the crane man in question was incompetent, careless, unskilled and reckless, yet, if you further believe from the evidence that the plaintiff's injury was not caused by any negligent act of said crane man as alleged in the declaration, but was caused by plaintiff's own want of care, or that it was the result of an accident, then you should find the defendant not guilty." By defendant's instruction 3 the jury were told that, "unless plaintiff had proven by a preponderance of the evidence that he was at and just before the accident in the exercise of due care and caution for his own safety" he could not recover and the verdict should be not guilty. Defendant's given instruction 13 is as follows:

"The jury are instructed that in order to find the defendant guilty in this case you must believe, from the evidence, that the injury complained of was occasioned by carelessness or negligence on the part of the defendant in retaining in its employ a careless and incompetent crane man, as alleged in the declaration, and was not simply an accident, and if the jury believe, from the evidence, that the injury resulted from a mere accident, and not from any negligence on the part of the defendant, as alleged in the declaration, then the plaintiff cannot recover and you should find the defendant not guilty."

We think that the substance of refused instruction 7 is contained in given instructions 3 and 13 and therefore it was not error to refuse to give said instruction.

The remaining contention of appellant is that the trial judge should have directed a verdict for the defendant.

In the malleable iron shop of defendant were four rooms, in each of which was an electric crane. Plaint-

iff was an electrician and worked in all the rooms alternately two weeks days and two weeks nights. When he worked nights he operated the crane. He was injured in room 2, which was 600 feet long from north to south and 300 feet broad. The crane was near the middle of the room from north to south, and the rails on which it moved ran east and west. The rails were thirty feet apart about fifteen feet above the floor and supported by posts. The crane consisted of the bridge, at the ends of which were wheels which ran on the rails; of the cross traveler which moved north and south, and of the hoist, by which an object could be raised or lowered. The bridge, cross traveler and hoist were each operated by separate motors controlled by the crane man, who stood in a cage suspended from the bridge. The crane man at and for several months before the time of the accident was Paul Papiech. Plaintiff had been down on the floor and his duties required him to go on the top of the crane to watch the working of an armature which he and other electricians had just installed in the motor of the cross traveler. The cage stood alongside of a post and steps attached to the post led to the cage. Steps on the side of the cage led to its top, which was on a level with the top of the bridge. Plaintiff testified that he intended to stand on an angle iron which formed the top of the bridge; that he passed through the cage and when he was on the top of the cage the crane was started and he lost his balance and fell; that as he fell the cross traveler was also started and his right hand went into the gearing which moved the cross traveler, was ground off, and he fell into the cage.

. Papiech, the crane man, testified that he saw plaintiff climb to the top of the cage; that the crane was stopped and he did not start it until plaintiff called out "all right," that he then moved the crane to take out the tops or bungs of a furnace; that he had to move the crane in order to get to the furnace; that he had taken out three bungs and went for the fourth

before plaintiff fell; that he moved the crane three times east and three times west after plaintiff went on top of the crane before he fell. He further testified that Lyons (another crane man in the service of defendant) was in the cage with him when plaintiff was hurt, and that he had seen Lyons in attendance at the trial. Lyons was not called as a witness. The evidence for the plaintiff tended to show that Papiech was either incompetent or negligent, or both, in the operation of the motors by which the crane or bridge, cross traveler and hoist were operated and moved; that the attention of defendant's foreman, Draeger, had been called to the improper manner in which he operated the motors which moved the different parts of the crane; and that his incompetency or carelessness had been manifested by repeated occurrences in the foundry.

Draeger testified that he had never been told of any fault on the part of Papiech, and his testimony and the testimony of the other witnesses called by the defendant tended to show that Papiech was a careful and competent crane man.

We think that from the evidence the jury might properly find that Papiech negligently started the crane and cross traveler on the occasion in question, and that his negligence directly contributed to plaintiff's injury; that he was before the accident either incompetent or careless and negligent in the control and operation of the crane and motors by which the different parts of the crane were moved and operated, and that defendant knew, or by the exercise of ordinary care, could have known, before the time of the accident, that he was incompetent or habitually careless and negligent. Appellant further contends that plaintiff knew, or by the exercise of reasonable care could have known, the character and qualities of Papiech as a crane man as to competency and carefulness or the reverse, and therefore it is immaterial whether he was competent or careful, because if he were not, plaintiff by his knowledge thereof and fail-

ure to object to working with him, assumed the risk. We think that on the evidence the question whether plaintiff knew, or by the exercise of reasonable care could have known, that Papiech was an incompetent or careless crane man, was a question of fact for the jury, on which their verdict must be held conclusive against the defendant.

We think that the court did not err either in refusing to direct a verdict for the defendant or in denying defendant's motion for a new trial on the ground that the verdict was against the evidence, and the judgment is affirmed.

*Affirmed.*